DAYTON BAR ASSOCIATION, APPELLEE, *v.*
LENDER'S SERVICE, INC., APPELLANT.

[Cite as Dayton Bar Assn. *v.* Lender's Service, Inc. (1988), 40 Ohio St. 3d 96.]

(No. 87-1878—Submitted October 19, 1988—Decided December 21, 1988.)

*Bieser, Greer & Landis* and *Michael W. Krumholtz,* for appellee.

*Lloyd & Weissenberger* and *John A. Lloyd, Jr.,* for appellant.

HOLMES, J. The sole issue presented for our consideration in this case is whether appellant, in furnishing for a fee the information contained in its property reports, is engaged in the unauthorized practice of law. For reasons which follow, we conclude that appellant is not so engaged, and thus reverse the judgment of the court of appeals.

In *Land Title Abstract & Trust Co.* v. *Dworken* (1934), 129 Ohio St. 23, 27, 1 O.O. 313, 315, 193 N.E. 650, 652, this court held that furnishing an opinion as to the condition or validity of title to real estate, "whether in a so-called statement or certificate of title, falls within the realm of the practice of law." The *Dworken* decision also held that a corporation may not lawfully practice law in Ohio. *Id.* at paragraphs two and three of the syllabus. See, also, *Judd* v. *City Trust & Savings*

*Bank* (1937), 133 Ohio St. 81, 10 O.O. 95, 12 N.E. 2d 288; *State, ex rel. Green,* v. *Brown* (1962), 173 Ohio St. 114, 18 O.O. 2d 361, 180 N.E. 2d 157; Gov. Bar R. I. This court held that the title guaranty company in *Dworken* was authorized by statute solely to prepare abstracts of title, and was not authorized to issue an opinion thereon. *Id.* at 32-33, 1 O.O. at 317, 193 N.E. at 654.

Later, in *Gustafson* v. *V.C. Taylor & Sons, Inc.* (1941), 138 Ohio St. 392, 20 O.O. 484, 35 N.E. 2d 435, this court adopted what has been called the "simple instrument" doctrine in a case approving the practice of real estate brokers filling in preprinted, blank real estate purchase contracts. The court held that "the supplying of simple, factual material such as the date, the price, the name of the purchaser, the location of the property, the date of giving possession and the duration of the offer requires ordinary intelligence rather than the skill peculiar to one trained and experienced in the law." *Id.* at 397, 20 O.O. at 486, 35 N.E. 2d at 437. See, also, Note, An Analysis of the Unauthorized Practice of Law in Ohio (1964), 33 U. Cin. L. Rev. 401, 412.

Finally, in *State, ex rel. Doria,* v. *Ferguson* (1945), 145 Ohio St. 12, 30 O.O. 241, 60 N.E. 2d 476, paragraph one of the syllabus, this court explicitly held what the *Dworken* decision had implied: "One who furnishes to another a certificate or memorandum containing a statement of the substance of documents or facts appearing on the public records, which affect the title to real estate, without expressing any opinion as to the legal significance of what is found or as to the validity of the title, is not engaged in the practice of law."

In that case, Doria, an attorney, was retained by an engineer of the State Highway Department to furnish certificates of title on various parcels of real estate through which the department desired to construct a road. Doria did so, but when he presented his bill for services to the State Auditor, the auditor refused to pay. The auditor argued that the Director of Highways was without authority to employ Doria to engage in the practice of law as G.C. 333 permitted only the Attorney General to practice law for the state. This court, in holding that the abstracts of title provided by Doria did not constitute the practice of law, noted that such abstracts "contained simply facts from the public records without the expression of any opinion concerning their legal significance." *Id.* at 16, 30 O.O. at 242, 60 N.E. 2d at 478. Further, the court stated that "a real distinction exists between the preparation of an abstract of title, reciting merely what the public records disclose, and the issuance of a certificate containing an opinion as to the validity of the title to real estate." *Id.* at 15, 30 O.O. at 242, 60 N.E. 2d at 478. "Of course, when an abstracter goes further and undertakes to certify as to the condition of the title, including an opinion as to its validity, he then enters the realm of the practice of law." *Id.*

Neither party here disputes the well-settled principles announced in these prior cases. Rather, appellee has argued throughout this action that Lender's Service is expressing opinions as to the validity or condition of title by the use of the terms "Present Title Holder (Grantee)" and "From Whom Acquired (Grantor)" and by exercising discretion whether to report purportedly released or cancelled liens. Such terms and exercise of discretion, argues appellee, place Lender's Service outside the limits of the *Doria* decision and thus such activity con-

stitutes the unauthorized practice of law. We do not agree.

The testimony of Lender's Service's witnesses at trial established that the use of legal terms of art, such as "title holder," is merely descriptive in nature, and is not intended by Lender's Service to be an expression of a legal opinion, nor is it represented as such by Lender's Service to its clients. Further, the testimony established that Lender's Service's searchers are instructed simply to omit any liens for which a full cancellation or release is of public record. The searchers are not instructed to examine any purported release for validity beyond determining that on its face it purports to be a full release by the owner of the lien and any such "examination" is, in fact, grounds for termination of employment. Finally, the "property report" which is given to the client expressly disclaims the validity or condition of the title so reported: "WE DO NOT VERIFY THAT LIENS SET FORTH BELOW ARE FILED AGAINST THE GRANTEE(S) NAMED HEREIN," and "THE FOLLOWING INFORMATION SHOULD NOT BE CONSIDERED AS A TITLE INSURANCE POLICY OR ANY OTHER FORM OF TITLE GUARANTY." As one searcher aptly put it, "I just write down what I see on the records."

Lender's Service is in the business of "searching" titles to real estate. It is not in the business of "examining" titles or rendering opinions thereon. The distinction between these activities was set out as early as 1930 in Thompson, Abstracts and Titles (2 Ed.) 1036-1037, Section 810, and remains a useful guide today: "The work of the lawyer who searches the various public offices in which the records affecting title to real estate are found in order to determine the ownership and condition of a particular tract of land may properly be termed an 'examining of the title.' On the other hand, the person who searches the records with no other object than to note down in more or less brief form the instruments and proceedings found therein and to use the same in making up the abstract, his work is more properly called 'searching the title.' He does not study the facts discovered by his search for their legal effect on the title. While he examines or reads the records and prepares a digest of their contents, his work is more or less mechanical. * * * [W]here his work does not include the rendering of an opinion as to the validity of the title as disclosed by his search, he can not properly be termed a 'title examiner.' While the abstract is the result of a careful and accurate 'examination' of the records, together with the instruments found recorded therein, the process, taken as a whole, must be distinguished from the examination conducted by one learned in the law and whose duty it is to render an opinion as to the validity of the title."

Lender's Service is not engaged in the unauthorized practice of law. We note, as an aside, that its property report is not even a true abstract, as it does not attempt to trace the chain of title back to a "root" transaction of forty years or more prior to the search. See R.C. 5301.47. Additionally, we observe that it would have been proper for the searchers to have noted both a lien *and* its purported release or cancellation on their reports, rather than simply omitting such lien. This would have provided Lender's Service's clients with more complete facts so that the client could " 'make his own examination and determine for himself on their sufficiency.' " *Doria, supra,* at 15, 30 O.O. at 242, 60 N.E. 2d at 478. However, the choice by Lender's Service to omit released liens

is without significance as it relates to the question of the practice of law.

In sum, we hold that the mere use of legal terms of art as headings on a title abstract or similar form does not, standing alone, operate as an expression of an opinion by the title searcher as to the legal effect of entries made under such headings, and thus does not constitute the practice of law.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.