LENDER'S SERVICE, INC., Plaintiff,

v.

DAYTON BAR ASSOCIATION, et
al., Defendants.

No. C3–84–731.

United States District Court,
S.D. Ohio, E.D.

Feb. 28, 1991.

John A. Lloyd, Jr., Cincinnati, Ohio, for plaintiff.

Mark A. Tuss, Dayton, Ohio, for defendants D'Amico & Allberry.

Neil F. Freund, Dayton, Ohio, for defendant Biegel.

Charles J. Faruki, Dayton, Ohio, for defendant Dayton Bar Ass'n.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

Plaintiff, Lender's Service, Inc., commenced the present action by filing a complaint on August 28, 1984 in the United States District Court for the Southern District of Ohio, Western Division. Plaintiff is allegedly engaged in the business of furnishing property reports containing information obtained from public records, such as land records. Plaintiff alleged that defendant Dayton Bar Association commenced an action against plaintiff in the Court of Common Pleas of Montgomery County, Ohio, asserting that plaintiff was engaging in the unauthorized practice of law. Plaintiff alleges that the prosecution of this litigation constituted a violation of the Sherman Act anti-trust provisions contained in 15 U.S.C. §§ 1 and 2.

On September 8, 1986, with agreement of the parties, this action was stayed pending the resolution of the proceedings in state court. On November 26, 1986, the common pleas court entered judgment in favor of the Dayton Bar Association in the state court proceedings. The decision of the trial court was affirmed by a divided court of appeals on October 7, 1987. *See Dayton Bar Ass'n v. Lender's Service, Inc.*, Slip Op. No. 10234, Montgomery County Court of Appeals, 1987 WL 18201 (October 7, 1987). A further appeal was taken to the Ohio Supreme Court. That court reversed the judgments of the lower courts on December 21, 1988, holding that plaintiff was not engaged in the unauthorized practice of law. *See Dayton Bar Ass'n v. Lender's Service, Inc.*, 40 Ohio St.3d 96, 532 N.E.2d 120 (1988).

On December 1, 1989, the stay in the instant case was lifted. On January 30, 1990, plaintiff filed an amended complaint naming Rudolph D'Amico, Alan Biegel and Fred Allberry as additional defendants. The individual defendants are attorneys who are members of the Dayton Bar Association's Committee on the Unauthorized Practice of Law. These individual defendants allegedly represented the Dayton Bar Association before the Ohio Supreme Court's Board of Commissioners on the Unauthorized Practice of Law, and were also counsel of record for a time in the Bar Association's state court litigation. On July 13, 1990, the case was reassigned to the docket of this court. This matter is now before the court for a decision on the motion of the defendant Bar Association to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6), and on the motions for summary judgment filed by the individual defendants.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Sum-

mary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In considering a motion to dismiss under Rule 12(b), a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Where matters outside the pleadings are presented in conjunction with a motion under Rule 12(b)(6), the motion must be treated as one for summary judgment under Rule 56. Fed.R.Civ.P. 12(b). Since materials outside the pleadings were submitted by both plaintiff and defendant in connection with the Bar Association's motion to dismiss, the court will consider the motion as one for summary judgment.

The Bar Association moves to dismiss on the basis that plaintiff's complaint fails to state a claim under the Sherman Act, 15 U.S.C. §§ 1 and 2, and further that plaintiff has failed to establish standing to sue under § 4 of the Clayton Act, 15 U.S.C. § 15. All of the defendants assert that they are entitled to *Parker v. Brown* and *Noerr–Pennington* immunity. Finally, the individual defendants claim that plaintiff's amended complaint against them is barred by the statute of limitations. Since the court has concluded that the defendants are entitled to judgment on the basis of their respective immunity and limitations defenses, the court will not address defendant Bar Association's argument concerning whether plaintiff has stated a claim under the Sherman Act.

## STATE ACTION IMMUNITY

■ Defendants contend that they are entitled to state action immunity from federal anti-trust liability. The state action doctrine had its inception in the case of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), in which the Supreme Court held that the Sherman Act was not intended "to restrain state action or official action directed by a state." *Id.*, 317 U.S. at 351, 63 S.Ct. at 313. The immunity from anti-trust liability accorded state officials in *Parker* was extended to private parties whose anticompetitive acts are the product of state regulation. *See, e.g., Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985). In order to claim state action immunity, private parties must show that the challenged restraint was "one clearly articulated and affirmatively expressed as state policy," *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980), *quoting Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978) (opinion of BRENNAN, J.) and the anticompetitive conduct must be actively supervised by the state itself, *Patrick v. Burget*, 486 U.S. 94, 100, 108 S.Ct. 1658, 1663, 100 L.Ed.2d 83 (1988). If the private party meets both these requirements, his anticompetitive act is deemed to be fairly attributable to the state, and therefore immune from anti-trust liability.

■ In regard to the first requirement of clear articulation and affirmative expression of state policy, it is not necessary for the private party to show that its actions were compelled by state law. *Southern Motor Carriers*, 471 U.S. at 60, 105 S.Ct. at 1728. If the statutory provision or rule plainly shows that the legislature or court contemplated the sort of activity which is challenged, the "clear articulation" requirement has been satisfied. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). A state policy which expressly permits but does not compel anticompetitive conduct may be "clearly

articulated." *Southern Motor Carriers,* 471 U.S. at 61, 105 S.Ct. at 1729. Anticompetitive conduct is immune so long as it is a reasonable and foreseeable exercise of powers delegated by the state. *Hybud Equipment Corp. v. City of Akron,* 742 F.2d 949 (6th Cir.1984). The fact that a defendant's action constituted a misapplication of state law is insufficient to defeat immunity. *Consolidated Television Cable Service, Inc. v. City of Frankfort,* 857 F.2d 354 (6th Cir.1988). The availability of *Parker* immunity also does not depend on the subjective intent of the actors, but rather on the objective two-prong test set forth in *Parker* and its progeny. *Id.* at 362; *Boone v. Redevelopment Agency of San Jose,* 841 F.2d 886 (9th Cir.1988).

■ In regard to the second requirement of active state supervision, the Supreme Court has held that the anticompetitive acts of the private party must further state policies. *Burget,* 486 U.S. at 101, 108 S.Ct. at 1663. The active supervision requirement mandates that the state exercise ultimate control over the challenged anticompetitive conduct; the mere presence of some state involvement or monitoring is insufficient. *Id.*

The Supreme Court has addressed the application of the *Parker* immunity doctrine in the context of anticompetitive acts on the part of state supreme courts, boards and other agents of state supreme courts, and bar associations. *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), involved an action challenging a bar association's minimum fee schedule for title examinations, which operated to impose a mandatory floor on the fees which attorneys could charge for those services. The Supreme Court found that the bar association was not a state agency in this situation, and that the implementation of the fee schedule did not constitute state action. In reaching this conclusion, the court noted that the bar association was not required to adopt advisory fee schedules, that there was no evidence that the Virginia Supreme Court had ever approved the advisory opinions issued by the Virginia State Bar Association concern-

ing the fee schedules, and that the rules of the Virginia Supreme Court in fact directed that lawyers were not to be controlled by fee schedules. *Id.,* 421 U.S. at 789–91, 95 S.Ct. at 2015. While there was language in the *Goldfarb* opinion to the effect that the anticompetitive activities must be compelled by the state, this compulsion requirement was later rejected in *Southern Motor Carriers,* 471 U.S. at 60–61, 105 S.Ct. at 1728–1729.

In *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), attorneys who were prosecuted for violations of the disciplinary rules of the Arizona Supreme Court regarding advertising brought suit under the Sherman Act. The Supreme Court in *Bates* noted that the state bar association played an enforcement role according to rules adopted by the Arizona Supreme Court, and acted as an agent of the court under the court's continuous supervision. *Id.,* 433 U.S. at 361, 97 S.Ct. at 2697. However, the state supreme court was the ultimate body wielding the state's power over the practice of law, and was the ultimate trier of fact and law in the enforcement process. *Id.,* 433 U.S. at 360–361, 97 S.Ct. at 2697. Thus, the Court concluded that the acts of the bar association were in effect the acts of the state itself, and were entitled to state action immunity.

In *Hoover v. Ronwin,* 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984), the Supreme Court reviewed a challenge by a rejected bar applicant to the bar examination grading formula implemented by the committee on examinations and admissions appointed by the state supreme court. Under the rules of the supreme court, the committee was required to submit its grading formula to the court prior to administering the bar examination, and an unsuccessful applicant had the right to petition directly to the court. The Supreme Court reaffirmed its conclusion in *Bates* that a state supreme court acting in a legislative or rulemaking capacity occupies the same position as a state legislature for purposes of *Parker* immunity. *Ronwin,* 466 U.S. at 568, 104 S.Ct. at 1995. The Supreme Court noted that although the administration of

the admissions process was delegated to the committee, the state supreme court retained strict supervisory powers over the committee through mandatory rules, including approval of the grading formula, and possessed the sole authority to determine admissions to the bar. *Id.*, 466 U.S. at 573–578, 104 S.Ct. at 1997–2000. The Supreme Court found, as in *Bates*, that the actions of the committee were in reality the actions of the state supreme court, i.e., action by the state itself, and that therefore there was no need to decide whether the state policy was clearly articulated, or whether there was active supervision.

The alleged anticompetitive action in the instant case involves the Ohio procedures for regulating the unauthorized practice of law. Under Article IV, § 2(B)(1)(g) of the Ohio Constitution, the Ohio Supreme Court is given original jurisdiction over admission to the practice of law and all other matters relating to the practice of law. The Ohio Supreme Court has inherent power to regulate, control and define the practice of law. *In re Unauthorized Practice of Law*, 175 Ohio St. 149, 192 N.E.2d 54 (1963). The Ohio Supreme Court also has the authority to make rules governing the practice and procedure in all courts and the admission to the practice of law. Article IV, § 5(B), Ohio Constitution.

Pursuant to its rulemaking powers, the Ohio Supreme Court has implemented the Supreme Court Rules for the Government of the Bar of Ohio. Rule VII of those Rules governs the unauthorized practice of law. In Rule VII, § 1 of the Rules, the Ohio Supreme Court created the Board of Commissioners on the Unauthorized Practice of Law ("Board"). The Board is comprised of seven members who are appointed for three-year terms by the Ohio Supreme Court. Rule VII, § 1. Rule VII, § 2 of the Rules for the Government of the Bar defines the jurisdiction of the Board of Commissioners. Rule VII, § 2(A) defines the unauthorized practice of law as "the rendering of legal services for others by anyone not registered under Rule VII or Rule XI of the Rules for the Government of the Bar of Ohio." Under Rule VII, § 2(B), the Board is given the authority to

"receive, entertain, inquire into, take evidence, make findings and submit recommendations concerning complaints of unauthorized practice of law."

The Board is authorized to refer matters involving the alleged unauthorized practice of law to the unauthorized practice of law committees of the various bar associations for investigation. Rule VII, § 3 of the Rules for the Government of the Bar. Under Rule VII, § 4 of the Rules for the Government of the Bar, all complaints arising from the unauthorized practice of law must be conducted exclusively in accordance with the provisions of Rule VII. Thus, Rule VII is the sole means of investigating and controlling the unauthorized practice of law in Ohio. Rule VII, § 4 also mandates that the bar associations' unauthorized practice of law committees investigate matters involving the unauthorized practice of law which are referred to such committees or which come to their attention. Rule VII, § 4 further provides that such committees "may cause a complaint to be filed pursuant to this rule in cases where the unauthorized practice of law is found." The unauthorized practice of law committees are also required to file an annual report with the Board disclosing the complaints filed during the previous year, the disposition, if any, of those complaints, and an explanation as to why any investigation has not been concluded. Rule VII, § 4.

Rule VII, § 5 of the Rules for the Government of the Bar authorize the filing of a complaint by the unauthorized practice of law committee of a bar association with the Board. The respondent who is charged with the unauthorized practice of law is given notice of the proceedings before the Board and the opportunity to file an answer to the complaint, after which a formal hearing is held by the Board. Rule VII, §§ 6 and 7. If the complaint or evidence is deemed by the Board to be insufficient, the Board must dismiss the complaint or refer the matter for further investigation. Rule VII, § 8. If the Board concludes that the respondent has engaged in the unauthorized practice of law, and that a permanent

order against such practice is warranted, it may authorize the bar association to commence an action in a court having jurisdiction over the matter for the purpose of obtaining a judicial determination of whether the respondent has engaged in the unauthorized practice of law. *Id.* Under Rule VII, § 8, any judgment arising from such an action "may be appealed by the parties as in any civil action." Finally, Rule VII, § 17 provides that Rule VII "and such regulations relating to investigations and proceedings involving complaints of unauthorized practice of law shall be liberally construed for the protection of the public, the Courts and the legal profession."

The individual defendants in the instant case are members of the Unauthorized Practice of Law Committee of defendant Dayton Bar Association. The record reveals that the individual defendants, acting on behalf of the defendant Bar Association as relator, filed a complaint with the Board against plaintiff and other title companies in the Dayton area. The Board conducted a hearing on November 29, 1983, and on February 7, 1984, the Board issued an order finding that plaintiff had engaged in the unauthorized practice of law and that a permanent order against such practice was warranted by the evidence. The Board's order further authorized the Dayton Bar Association to commence an action for the purpose of obtaining a judicial determination of whether plaintiff had engaged in the unauthorized practice of law. Thereafter, the Bar Association filed an action in the Montgomery County Court of Common Pleas. As previously noted, the common pleas court and court of appeals found in favor of the Bar Association. The Ohio Supreme Court agreed to review the case and reversed the judgments of the lower courts, finding that plaintiff did not engage in the unauthorized practice of law.

 Defendants first argue that their actions in filing a complaint before the Board and in filing suit pursuant to the Board's authorization were in effect the acts of the State of Ohio, and were therefore immune from anti-trust liability. While private actors must meet the two-pronged test as a prerequisite for immunity, state agencies, as instrumentalities of the state, are immune so long as their anti-competitive activities were reasonably foreseeable. *Fuchs v. Rural Electric Convenience Co–Operative Inc.*, 858 F.2d 1210, 1215 (7th Cir.1988). Likewise, the two-pronged test need not be addressed where, as in *Ronwin*, the anti-competitive act was in reality the act of the state. However, as the court in *Fuchs* noted, 858 F.2d at 1216, it is often difficult to determine whether actors should be treated as public agencies or private entities, particularly where, as in *Fuchs*, a "hybrid" actor with both public and private attributes is involved.

In the present case, the defendants were public actors in the sense that the procedures in Rule VII constitute the only means by which the Ohio Supreme Court supervises the unauthorized practice of law. The majority of the provisions in Rule VII are mandatory, not discretionary. One exception is found in § 4 of Rule VII, which provides that the bar association committee "may cause a complaint to be filed" with the Board. Thus, the bar association committees are left with a certain amount of discretion as to whether to file a complaint with the Board, although this discretion is monitored by the Ohio Supreme Court through the mandatory reporting requirements of Rule VII, § 4. Further, while Rule VII allows the Board to authorize a relator to file an action in common pleas court, the language of the Rule does not clearly require the relator to file suit once authorization is given, and would appear to contemplate some discretion on the part of a bar association-relator in determining whether to file an action. It is within this apparent realm of discretion that bar associations may function more as private actors than state agencies.

In *Ronwin*, the Supreme Court relied on the fact that the state supreme court rules were mandatory in nature. *Ronwin*, 466 U.S. at 576, 104 S.Ct. at 1999. The Supreme Court further noted that the alleged anti-trust conduct, that being the decision to deny admission to the bar, was a decision which was specifically reserved to the

**438**

state supreme court, and that therefore the challenged conduct was in reality that of the state supreme court. *Id.* at 573, 578, 104 S.Ct. at 1997, 2000. In contrast, the provisions of Rule VII are not entirely mandatory. The alleged anti-trust conduct of filing complaints against plaintiff with the Board and with the common pleas court entailed some element of discretion on the part of defendants. The court concludes that under the provisions of Rule VII, the acts of relator cannot be considered as being in effect the conduct of the Ohio Supreme Court under the *Ronwin* analysis.

 Defendants argue in the alternative that their conduct was protected by state action immunity because the challenged restraint was clearly articulated as state policy and was actively supervised by the state.

 It is well established that the state "bears a special responsibility for maintaining standards among members of the licensed professions." *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 460, 98 S.Ct. 1912, 1920, 56 L.Ed.2d 444 (1978). States have a compelling interest in the practice of professions, and "as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Goldfarb,* 421 U.S. at 792, 95 S.Ct. at 2016. States may also decide that some forms of business competition may be demoralizing to the ethical standards of a profession. *Id.*

In this case, the State of Ohio has vested the authority to regulate the practice of law in the Ohio Supreme Court. Ohio Constitution, Article IV, § 2(B)(1)(g). The Ohio Supreme Court, pursuant to its rulemaking powers, has promulgated Rule VII of the Rules for the Government of the Bar of Ohio to provide a procedural framework for the investigation and prosecution of parties engaging in the unauthorized practice of law. The provisions of Rule VII clearly evidence an intention on the part of the Ohio Supreme Court to regulate the unauthorized practice of law through the Rule VII procedures, which under § 17 of

that Rule must be "liberally construed for the protection of the public, the Courts and the legal profession." Further, the acts of defendants, as alleged in plaintiff's complaint, were acts taken pursuant to the authority granted under Rule VII to bar associations and bar association committees on the unauthorized practice of law. The conduct of defendants was a reasonable and foreseeable exercise of powers delegated by the Ohio Supreme Court under Rule VII so as to satisfy the "clear articulation" requirement.

As to the requirement of active state supervision, the activities of bar associations under Rule VII are in furtherance of the state policy of investigating and prosecuting parties who have allegedly engaged in the unauthorized practice of law. The procedures under Rule VII entail active supervision by the state. Under Rule VII, § 4, all complaints regarding the unauthorized practice of law must be filed with the Board, whose members are appointed by the Ohio Supreme Court. The investigative activities of a bar association regarding alleged instances of the unauthorized practice of law are monitored through the reporting requirements of Rule VII, § 4. A civil action may not be filed unless the Board concludes, following a formal hearing, that the respondent has engaged in the unauthorized practice of law, and authorizes the relator to file suit. An action for a judicial determination of whether the relator has engaged in the unauthorized practice of law is filed in the court of common pleas, and the judgment of that court is subject to review by the court of appeals and the Ohio Supreme Court.

As noted in *Burget,* 486 U.S. at 103–104, 108 S.Ct. at 1664, the Supreme Court has not yet decided the question of whether review by state courts in their judicial capacity can adequately supervise private conduct for purposes of the state-action doctrine. However, many aspects of the Rule VII procedure are more analogous to cases such as *Bates, supra,* which involve "State Supreme Courts with agency-like responsibilities over the organized bar." *Burget,* 486 U.S. at 104, 108 S.Ct. at 1665.

Under Rule VII, the Board acts as the agent of the Ohio Supreme Court for the purpose of making the initial determination of whether a respondent has engaged in the unauthorized practice of law. A civil action may be filed only if such action is authorized by the Board. Thus, there is active state involvement early in the review process.

Through the provisions of Rule VII, the Ohio Supreme Court has designated the state common pleas courts as its next agents in the review process. Rule VII provides for the filing of an action in common pleas court for the purpose of obtaining a judicial determination of whether the respondent-defendant has engaged in the unauthorized practice of law, and whether injunctive relief is appropriate. An appeal as of right to the state court of appeals is authorized under Rule VII, § 8, which provides for appeal as in any other civil action. The parties may also seek review by the Ohio Supreme Court of a decision of the court of appeals. The Ohio Supreme Court thereby retains the authority to make the final determination on the issue of respondent's unauthorized practice of law. If the Ohio Supreme Court agrees with the determination of the court of appeals, it may so indicate by denying a petition for writ of certiorari. If the Ohio Supreme Court disagrees with the lower court determinations, further review may be granted and the case addressed on its merits. The fact that the Ohio Supreme Court may decline to hear some cases does not alter the fact that that court reserves the right to make the ultimate decision. In this case, the Ohio Supreme Court actually exercised that authority by accepting the case for review on the merits and by rendering a decision reversing the judgments of the lower courts.

The court finds that the "clear articulation" and "active state supervision" requirements of the *Parker* immunity doctrine have been satisfied in the present case. The alleged anti-trust acts of the defendants were acts taken pursuant to the provisions of Rule VII, and defendants are entitled to state action immunity.

## NOERR–PENNINGTON IMMUNITY

 Defendants also assert that they are protected from anti-trust liability under the doctrine of *Noerr–Pennington* immunity. The doctrine derived its name from the Supreme Court decisions in *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) and *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Under the *Noerr–Pennington* doctrine, genuine attempts to influence the passage or enforcement of laws are protected by the First Amendment right to petition, and are immune from anti-trust scrutiny, regardless of whether there is an anticompetitive motive behind those attempts. *Pennington*, 381 U.S. at 669–671, 85 S.Ct. at 1593–1594; *Noerr*, 365 U.S. at 137–139, 81 S.Ct. at 529–530. Attempts to define the law through legal action filed with courts and administrative agencies is also protected. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Since the anti-trust activities of defendants as alleged in plaintiff's complaint consisted of filing a complaint with the Board and filing a civil action in common pleas court, defendants' conduct would fall within the perimeters of the *Noerr–Pennington* immunity doctrine.

 Plaintiff argues, however, that defendants' conduct falls within the "sham" exception to the *Noerr–Pennington* doctrine. The doctrine does not protect against improper attempts to influence the government or the courts that are a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *California Motor Transport*, 404 U.S. at 511, 92 S.Ct. at 612. The sham exception does not apply merely because a party files a suit with the principle purpose of harming his competitor. *Westmac, Inc. v. Smith*, 797 F.2d 313 (6th Cir.1986). Rather, the sham exception is a narrow one, applicable where the defendant filed the suit, not for the purpose of obtaining a favorable judgment, but

rather for the purpose of harassing or harming a competitor through the filing of the suit itself, or under circumstances indicating an abuse of the judicial process. *Id.* at 317–318. Where a lawsuit raises a genuine legal issue, a rebuttable presumption arises that it is a serious attempt to obtain a judgment on the merits, and the anti-trust plaintiff bears the evidentiary burden of rebutting the presumption and proving that the suit falls within the sham exception. *Id.* at 318.

■ Courts have held that the anti-trust plaintiff must include allegations of sham motive and facts from which a sham could be inferred in his complaint where the anti-trust allegations involve conduct within the *Noerr–Pennington* doctrine. *See City of Gainesville v. Florida Power & Light Co.*, 488 F.Supp. 1258 (S.D.Fla. 1980); *Mountain Grove Cemetary Ass'n v. Norwalk Vault Co. of Bridgeport, Inc.*, 428 F.Supp. 951 (D.Conn.1977). The anti-trust plaintiff claiming "sham" behavior must "state the basis for this allegation in more than conclusory terms; his complaint must provide some basis for believing that what appears to be an exercise of the right to petition is in reality something else." *City of Newark v. Delmarva Power & Light Co.*, 497 F.Supp. 323, 326 (D.Del. 1980).

The sole allegation in plaintiff's amended complaint which could even remotely be construed as suggesting the sham exception is found in paragraph eight, where it is alleged that the Dayton Bar Association's Unauthorized Practice of Law Committee determined that the use of certain forms by plaintiff constituted the unauthorized practice of law even though "it was well-settled law in the State of Ohio that abstracting factual title information from the public records by non-lawyers did not constitute the practice of law." The court finds that this language is insufficient to state a basis for the sham exception. The "well-settled law" referred to in that paragraph makes no reference to defendants' concern about the use of forms mentioned in that same paragraph. See *infra*. The allegation in paragraph eleven that defendants' actions were "solely for anti-competitive motive" likewise do not suggest the sham exception, since the sole fact that defendants act to defeat competition will not result in a denial of *Noerr–Pennington* immunity. *Westmac*, 797 F.2d at 317.

■ Even assuming *arguendo* that plaintiff's complaint is sufficient to set forth the sham exception, plaintiff still bears the burden of coming forward with sufficient facts to support that exception. Plaintiff argues that defendants' suit did not involve a genuine legal issue and constituted an abuse of process. Plaintiff asserts that it was well established under Ohio law that the act of writing down information from public records did not constitute the practice of law. However, an examination of the state court opinions in the litigation commenced by defendants reveals that the issue there was not simply whether the recording of information constituted the unauthorized practice of law, but whether the use of legal terms of art as headings on forms where such information was recorded constituted the practice of law, a question which was not specifically addressed in the previously existing precedent. As noted by the Ohio Supreme Court, defendants argued throughout the litigation that the use of headings by plaintiff placed its activities outside the limits of cases such as *State, ex rel. Doria v. Ferguson*, 145 Ohio St. 12, 60 N.E.2d 476 (1945). *Dayton Bar Ass'n*, 40 Ohio St.3d at 98, 532 N.E.2d 120. Further, the Ohio Supreme Court relied not only on case precedent, but also on the testimony at trial concerning the exact nature of plaintiff's business in arriving at the conclusion that plaintiff was not practicing law. *Id.* Thus, it would appear that a mere examination of precedent would not have resolved the legal and factual issues present in plaintiff's case. This court does not agree that defendants should have been aware, based upon existing precedent, that they would not prevail, nor can it be said that their lawsuit was baseless or without a genuine legal issue.

A further indication that defendants' suit was not baseless was the fact that defendants prevailed in the trial court and the

court of appeals. *Potters Medical Center v. City Hospital Ass'n*, 800 F.2d 568, 578 (6th Cir.1986). The fact that the trial judge and a majority of the court of appeals reached the opposite conclusion from that of the dissenting appellate judge and the Ohio Supreme Court indicates that there was room for differing legal opinions in this area.

 Plaintiff argues that no weight should be accorded to the trial court's judgment due to the fact that he had owned a title company and was therefore biased against plaintiffs. Even assuming that such a circumstance would have constituted proof of bias on the part of the trial court, plaintiff, despite its knowledge of this fact, did not file an affidavit of disqualification in the state court pursuant to Ohio Revised Code § 2701.03, nor did plaintiff move for a new trial pursuant to Ohio R.Civ.P. 59. Plaintiff's belated complaint of bias in this court is insufficient to indicate that defendants' suit was a sham. Further, the trial court's judgment was affirmed by a majority of the court of appeals. Plaintiff argues that the court of appeals simply acted as a "rubber stamp" for the trial court's judgment. Aside from the fact that a divided appellate decision can hardly be construed as a "rubber stamp," this court notes that all members of the appellate panel were judges of the Twelfth District Court of Appeals sitting by designation, not judges from the Dayton area, and no bias on the part of these judges has been demonstrated by plaintiff.

Plaintiff further submits evidence of a hostile statement made by defendant D'Amico to a former employee of his title business, Centennial Title, when she left his employ to establish her own title company. Even assuming that it is correct, as stated by Lilo Kuschnerus in her affidavit (Appendix F to plaintiff's brief) that defendant D'Amico bore her some type of grudge due to their prior relationship, such information does not bear on the motive of defendants in instituting the action against plaintiff.

Plaintiff also relies on the affidavit of Robert P. Bartlett (Appendix D to plaintiff's brief), in which Mr. Bartlett relates that defendants D'Amico and Biegel urged him to settle the case brought by the Bar Association. The court does not agree that this evidence establishes that the state court action was a sham. If anything, the conversations described by Mr. Bartlett tend to indicate that defendants believed that the lawsuit had merit and that the Bar Association would prevail, and that defendants wanted to obtain a favorable judgment.

This court finds that the legal issue raised by defendants' suit was a genuine legal issue, and that the suit was not baseless when viewed in the context of precedent. Plaintiff therefore bears the burden of coming forward with evidence to rebut the presumption that the suit constitutes a serious attempt to obtain a judgment on the merits. *Westmac*, 797 F.2d at 318. Plaintiff has produced no evidence to rebut the presumption or to support a finding that defendants did not seek a favorable judgment, or that they filed the action which they knew to be baseless merely to harass the plaintiff. Here, as in *Westmac*, the circumstances of the filing of the suit are clear, and it is also apparent from the state court decisions that "the state courts considered the suit to present substantial issues, even though defendants were not ultimately successful." *Id.*, 797 F.2d at 319. Under such circumstances, a grant of summary judgment on the issue of immunity is appropriate. *Id.* The court finds that defendants are entitled to *Noerr–Pennington* immunity.

## STATUTE OF LIMITATIONS DEFENSE

 The individual defendants assert that the claims against them are barred by the statute of limitations. The relevant statute of limitations for private anti-trust suits brought pursuant to 15 U.S.C. § 15 is found in 15 U.S.C. § 15b, which provides that an "action to enforce any cause of action under sections 15, or 15a or 15c, of this title shall be forever barred unless commenced within four years after the cause of action accrued."

An anti-trust cause of action accrues when a defendant commits an act which injures the plaintiff's business. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Where an ongoing conspiracy is alleged, each act committed by defendant results in the accrual of a new cause of action to recover damages caused by that act, and the statute of limitations as to those damages runs from the commission of that act. *Id.* 401 U.S. at 338, 91 S.Ct. at 806. When a plaintiff is injured by an act of a conspirator, a cause of action immediately accrues to the plaintiff to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date. *Id.*, 401 U.S. at 339, 91 S.Ct. at 806. However, where future damages are too speculative to be proved, a cause of action accrues on the date they are suffered. *Id.*

*Zenith* has not been construed as tolling the limitations period in every case where plaintiff is seeking damages from being excluded from a market the profitability of which will be revealed only in the fullness of time. *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir.1984). Unless special circumstances preclude an award of damages as being excessively speculative, the statute of limitations "is not tolled simply in order to wait and see just how well the defendant does in the market from which he excluded the plaintiff." *Id.* The fact that a plaintiff's injuries "have a rippling effect into the future only establishes" his possible entitlement to future damages and does not eliminate the requirement of bringing suit within four years of an overt act which causes injury. *Peck v. General Motors Corp.*, 894 F.2d 844, 849 (6th Cir.1990). Thus, courts have distinguished between situations where damages are uncertain in the sense of failure to establish an injury, which prevents recovery, and uncertain extent of damages, which implies imprecision as to the scope or extent of the injury, which does not prevent recovery. *Mir v. Little Company of Mary Hospital*, 844 F.2d 646 (9th Cir.1988); *Pace Industries v. Three Phoenix Co.*, 813 F.2d 234 (9th Cir. 1987).

The latest overt act alleged in plaintiff's complaint to have been committed by the defendants was their involvement in the filing of the Bar Association's action in common pleas court on February 22, 1984. The exact date of their withdrawal as counsel of record is not disclosed, although they were no longer counsel of record when the trial court issued its findings of fact and conclusions of law on September 24, 1986. However, the exact date is irrelevant, since the operative overt act for purposes of the anti-trust limitations statute is the filing of the suit. *Korody-Colyer Corp. v. General Motors Corp.*, 828 F.2d 1572 (Fed.Cir.1987); *Pace*, 813 F.2d at 238–239. The continued prosecution of a lawsuit through the normal channels of the court system relates back to the initial decision to file, and does not extend the accrual of the cause of action. *Korody-Colyer Corp.*, 828 F.2d at 1579; *Pace*, 813 F.2d at 238–239. Here, February 22, 1984 is the most recent overt act alleged in plaintiff's complaint.

Plaintiff has alleged no special circumstances in the complaint, such as fraudulent concealment or duress, which would toll the running of the limitations period. Plaintiff bears the burden of alleging such circumstances in the complaint. *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248 (9th Cir.1978).

Plaintiff argues that the statute of limitations did not start to run until the decision of the Ohio Supreme Court resolving the unauthorized practice of law issue was filed, because its damages were speculative up to that time, and because plaintiff could not state an anti-trust claim prior to the Ohio Supreme Court's decision. Plaintiff seeks to analogize its anti-trust action with a claim of malicious prosecution under state law, which contains the element that the party asserting malicious prosecution prevailed in the prior action. While reference was made to a claim of malicious prosecution in *Baxter Travenol Laboratories, Inc. v. LeMay*, 536 F.Supp. 247 (S.D. Ohio 1982), that reference is in the context

of whether termination of litigation in favor of the anti-trust plaintiff would establish the "sham" exception to the *Noerr–Pennington* immunity doctrine. Here, assuming *arguendo* that plaintiff's complaint stated a claim under the Sherman Act, the alleged acts of defendants would be anti-competitive regardless of whether plaintiff was found to have engaged in the unauthorized practice of law. Such a finding might have an impact on whether one of the immunity defenses or exceptions to the application of the federal anti-trust laws could be established by defendants, or on the ultimate success of plaintiff's anti-trust action, but was not a necessary prerequisite to stating an anti-trust claim.

■ Plaintiff has also not shown that its damages were too speculative to permit a claim against the individual defendants. An argument similar to that advanced by plaintiff here was made by the plaintiff in *Mir, supra.* In *Mir,* the plaintiff, who was a physician, was denied staff privileges at the defendant hospital, and filed an action in state court to challenge the hospital's decision. Plaintiff argued that until the completion of the state court action, his damages would be speculative, because if he prevailed in the state court action, the hospital might be required to accord him the staff privileges he sought. The court in *Mir* concluded that the injury occurred when the decision to deny staff privileges was made, and the fact that the extent of the injury was unknown would not have prevented recovery. *Mir,* 844 F.2d at 650.

The Ninth Circuit in *Pace,* 813 F.2d at 240, also rejected the plaintiff's argument that damages in the form of lost profits and attorney's fees resulting from defendants' filing of a state court action were so speculative as to require tolling of the limitations period until after the conclusion of the litigation in state court.

In its original complaint, plaintiff claimed damages in the amount of eight million dollars for loss of profits and destruction of business good will and other assets allegedly caused by defendant Bar Association's acts. Thus, in 1984 when this suit was filed, plaintiff had no difficulty in assigning a dollar figure to its anticipated loss. In the amended complaint filed on January 30, 1990, plaintiff requested damages in the amount of $130,263.55 for attorney's fees and $20,000 in corporate expenses. Damages in the form of lost profits and lost business good will were not so speculative as to toll the statute of limitations. Similarly, while the exact dollar amount of attorney's fees which would be incurred in the state court litigation might not have been precisely determinable in 1984, it was foreseeable that attorney's fees would accrue during the defense of the state court action. The court finds that the pendency of the state court action did not toll the statute of limitations in this case, and that the damages allegedly caused by the filing of the state proceedings were not so speculative as to toll the running of the limitations period.

■ Plaintiff next argues that the statute of limitations was tolled by the stay granted in the anti-trust action. A like argument was rejected by the court in *Pace,* 813 F.2d at 240–241, which held that the pendency of a previously filed state court action did not toll the anti-trust statute of limitations, even where the state court action bore some relationship to the anti-trust claim. The statute of limitations is tolled only where the state court action is identical to the federal action, not merely a related action arising from the same facts. *Id.,* 813 F.2d at 241, *citing Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d 315, 320 (1st Cir.1978). Here, as in *Pace,* 813 F.2d at 241, plaintiff could only enforce its federal anti-trust rights in federal court, and while the state court action was related to plaintiff's federal action, it was not the same action. *See also, Mir,* 844 F.2d at 649. Further, the individual defendants in the instant case were not parties to the state court action, and therefore no state court action was pending as to them which would have operated to toll the limitations period.

■ Further, plaintiff offers no reasonable explanation as to how the stay would have precluded it from amending its com-

plaint to assert claims against the individual defendants. The stay was not entered until after this action had been pending for over two years. The stay was not forced upon plaintiff, but rather was by agreement of the parties. The stay order contained no language which would have precluded plaintiff from seeking to amend its complaint, and plaintiff does not adequately explain its failure to do so. Since no claim had yet been asserted against the individual defendants at the time the stay order was entered, the stay order could not possibly have applied to new claims being asserted against new defendants. The court in *Korody–Colyer*, 828 F.2d at 1574–1575, rejected a similar tolling argument under analogous circumstances.

Defendants assert that one possible reason for the delay might be that plaintiff discovered that defendant Bar Association had few assets, and that the individual defendants were added in the hope of finding a "deep pocket." Regardless of whether such financial concerns were a factor, it is clear, as it was in *Korody–Colyer*, 828 F.2d at 1575, that when the stay was entered, plaintiff chose to concentrate on the state court litigation, and gave no notice of the possibility of asserting claims against the individual defendants. The court concludes that the stay in this case did not preclude plaintiff from amending or seeking to amend its complaint and that the statute of limitations was not tolled by the stay order insofar as the assertion of claims against the individual defendants was concerned.

■ Finally, plaintiff asserts that the claims against the individual defendants were timely because they related back to the original complaint. The relation back of amendments to the complaint is governed by Fed.R.Civ.P. 15(c), which provides in relevant part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party

against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

In discussing the requirements of Rule 15(c), the Supreme Court in *Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986) stated:

> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

The determination and factual inquiries as to whether the elements of Rule 15(c) have been satisfied are made by the district court. *Berndt v. State of Tennessee*, 796 F.2d 879, 883 (6th Cir.1986).

In this case, not all of the elements of Rule 15(c) have been satisfied. There is technically no evidence before the court to show that the individual defendants ever received notice of the filing of the original complaint in the present case, although practically speaking, the court would be surprised if they did not have notice. More importantly, it has not been shown that the defendants knew or should have known that, but for a mistake concerning identity, the action would have been brought against them.

This is not a case of mistaken identity. In fact, the individual defendants were referred to in the original complaint as being

agents and co-conspirators of the defendant Bar Association in the alleged acts which were assertedly the cause of injury to plaintiff, yet they were not named in the complaint as defendants. There is no indication in the record that plaintiff was unaware of or misled in regard to the nature of the alleged involvement of the individual defendants in this case, so as to preclude plaintiff from naming them as defendants in the first complaint. Where no mistake has been made concerning the identity of the proper party, Rule 15(c) does not apply. *Wood v. Worachek,* 618 F.2d 1225 (7th Cir.1980).

The instant case is one in which the individual defendants could only conclude that plaintiff's failure to name them as defendants was the result of a conscious tactical decision on the part of plaintiff. Where defendants were named in the body of the complaint, yet not as parties, and where plaintiff made no effort during the entire four years of the limitations period, either before or after this action was commenced, to assert claims against the defendants individually, the only apparent reason for plaintiff's forebearance was deliberate choice, not error. Other courts when faced with similar circumstances have concluded that Rule 15(c) was not satisfied. *See e.g. Curry v. Johns–Manville Corp.,* 93 F.R.D. 623 (E.D.Pa.1982) (where plaintiff made no timely effort to amend complaint to assert a direct claim against party brought into the case as a third-party defendant, decision was reasonably the result of tactical choice); *Rogatz v. Hospital General San Carlos, Inc.,* 89 F.R.D. 298 (D.P. R.1980); *Ward v. Hercules,* 75 F.R.D. 455 (D.Mass.1977) (where new defendant's product was mentioned in original complaint in products liability action, decision not to include defendant in original complaint not based on mistaken identity).

In light of the foregoing, the court concludes that plaintiff's claims against the individual defendants do not relate back to the original complaint under Rule 15(c), and that those claims are barred by the statute of limitations in § 15b. The individual defendants are entitled to summary judgment on the basis of their limitations defense.

## CONCLUSION

The court, having reviewed the materials in the record, concludes that no genuine issues of material fact have been shown to exist, and that defendants are entitled to summary judgment based upon the defenses of state action and *Noerr–Pennington* immunity and, in regard to the individual defendants, the defense of the statute of limitations.

▇▇▇ The court notes plaintiff's suggestion in its brief in opposition to defendants' motions that an award of summary judgment would be inappropriate at this time because plaintiff has conducted no discovery in this case. This court is at a loss to comprehend why plaintiff has yet to conduct discovery in this case in the face of defendants' motions for summary judgment. While such abstention during the course of the stay is understandable, the stay in this case was lifted on December 1, 1989. Plaintiff has offered no reasonable explanation for its failure to promptly obtain discovery if it felt that such discovery was necessary to respond to defendants' motions.

Further, the court concludes that additional discovery would be of little or no assistance to plaintiff in addressing the issues raised by defendants' motions. The defendants' entitlement to state action immunity predominantly involves a legal determination, not one of fact. The allegations in plaintiff's own amended complaint indicate that defendants' alleged anti-competitive acts were acts taken under the provisions of Rule VII of the Rules for the Government of the Bar. The question of whether a private or quasi-private party acting under the Rule VII procedures is entitled to state action immunity is a legal one which would not benefit from further discovery.

The defendants' entitlement to *Noerr–Pennington* immunity is largely a legal determination. The question of whether the lawsuit was a sham is judged by objective standards. *See Westmac, supra; City of Gainesville,* 488 F.Supp. at

1266, n. 7. After litigating the state court action, plaintiff would be as familiar with the circumstances surrounding the state court proceedings as the defendants, and plaintiff has alleged no facts which it would reasonably hope to discover which would further illuminate the issue of sham motive. *See City of Gainesville*, 488 F.Supp. at 1266–1267. Finally, the statute of limitations defense of the individual defendants also entails predominately legal rather than factual issues. Plaintiff does not dispute when the Rule VII proceedings and state court action occurred, and plaintiff's mention of the individual defendants in the text of the original complaint indicates that plaintiff was aware of the participation of the individual defendants in that process at that time. Plaintiff has not specified what information bearing upon the limitations defense it would reasonably hope to obtain through discovery which it has not already obtained by reason of the state court action.

Accordingly, the motions for summary judgment of the individual defendants are granted. The motion to dismiss of defendant Dayton Bar Association on the basis of state action and *Noerr–Pennington* immunity, which the court has considered as a motion for summary judgment, is granted. The clerk shall enter judgment for defendants.