SMITHKLINE BEECHAM CORPORA-TION and Beecham Group P.L.C., Plaintiffs–Appellants,

v.

COPLEY PHARMACEUTICAL, INC. and Teva Pharmaceuticals USA, INC., Defendants–Appellees,

and

Eon Labs Manufacturing, Inc., Defendant–Appellee,

and

Geneva Pharmaceuticals Technology Corporation, and Invamed, Inc., Defendants–Appellees.

No. 01–1611.

United States Court of Appeals, Federal Circuit.

Aug. 15, 2002.

**916**

Before MAYER, Chief Judge, MICHEL and GAJARSA, Circuit Judges.

PER CURIAM.

SmithKline Beecham Corporation and Beecham Group P.L.C. ("Beecham") appeal the judgment of the United States District Court for the District of Massachusetts rendering claims 2 and 4 of U.S. Patent No. 4,420,639 invalid for anticipation under 35 U.S.C. § 102(b) and unenforceable for inequitable conduct before the Patent and Trademark Office. *In re: '639 Patent Litigation,* 154 F.Supp.2d 157 (D.Mass.2001) (Memorandum of Findings of Fact and Conclusions of Law). Because the court's findings on anticipation are not clearly erroneous, we *affirm.*

■ A district court's finding of anticipation is a factual question that we review for clear error. *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1565, 24 USPQ2d 1321, 1326 (Fed.Cir.1992). A claim is anticipated if a single prior art reference contains each and every limitation either expressly or inherently. *Bristol–Myers Squibb Co. v. Ben Venue Labs., Inc.,* 246 F.3d 1368, 1374, 58 USPQ2d 1508, 1512 (Fed.Cir.2001). Additionally, a "reference must be enabling and describe the applicant's claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention." *In re Paulsen,* 30 F.3d 1475, 1479, 31 USPQ2d 1671, 1673 (Fed.Cir. 1994).

Copley Pharmaceuticals, Teva Pharmaceuticals USA, Inc., Eon Labs Manufacturing, Inc., Geneva Pharmaceuticals Technology Corporation, and Invamed, Inc., (collectively "Copley") argue that an article by J.N. Chatterjea and R. Prasad entitled "Condensation of Mannich Base Salts with Phenols: Orientation of Adducts," 11 Indian J. Chem. 214–18 (March 1973) ("Chatterjea & Prasad"), anticipates claims 2 and 4 of Beecham's '639 patent directed to nabumetone, an anti-inflammatory drug. We agree.

Chatterjea & Prassad discloses claim 4's single limitation, nabumetone's chemical structure, 4–(6′–Methoxy–2′–naphthyl)butan-2-one. At trial, one of the inventors of the '639 patent, Dr. Carl J. Rose, admitted that when he read Chatterjea & Prasad in 1973, he understood that nabumetone's chemical name and structure was described. A memorandum generated by Beecham's patent department in 1982 discussing a strategy to secure patent protection for nabumetone reiterated this position: "[W]e cannot deny the actual disclosure of 14777 [nabumetone]."

Chatterjea & Prasad also enables one of skill in the art to make nabumetone by disclosing a four-step process by which nabumetone, a methoxy ketone, is generated from the starting material methoxy acetate. A 1976 memorandum from Rose describes how he followed the four steps and successfully generated nabumetone. Moreover, a memorandum from Beecham's patent department in 1977 confirmed that the "process which they [Chatterjea & Prasad] described does lead to that compound [nabumetone] when repeated." Ample testimony at trial demonstrates that one of skill in the art, when reading Chatterjea & Prasad, would understand how to generate nabumetone because the process is based upon chemical reactions well-known in the art.

Beecham argues, however, despite its admissions to the contrary, that Chatterjea & Prasad is not anticipating because it does not actually describe nabumetone. It relies on footnote 19 in Chatterjea & Prasad located next to the starting material, methoxy acetate, referring the reader to a reference authored by R.G. Jones. If one follows the process described by Jones to generate methoxy acetate, an error (the "Jones error") in the process causes hydroxy acetate to be generated rather than methoxy acetate. Beecham asserts that Chatterjea & Prasad, because of the existence of the footnote, necessarily used the Jones process to make their starting material, and therefore they actually began with hydroxy acetate and generated a hydroxy ketone, not nabumetone. This argument is unpersuasive.

The "Jones error" was disclosed and corrected in "Molecular Structure and Estrogenic Activity XVI. Influence of the Distance of the Functional Groups in the Allenolic Series," 179 Bull. Chim. Soc. France 962–69 (1955) ("Ormancy" reference), eighteen years before the publication of Chatterjea & Prasad. Copley's expert witness, Dr. Edward C. Taylor, testified that one of skill in the art would be aware of the Jones error, and its subsequent correction in the Ormancy reference. And Beecham repeatedly states in its brief that alternatives to the Jones process to generate methoxy acetate were known in the art. Thus one of skill in the art would read Chatterjea & Prasad to begin with methoxy acetate and disclose a methoxy ketone, nabumetone, and not a hydroxy ketone by nature of its plain language and purpose. Moreover, in June of 1982, Chatterjea reported to Beecham that he had repeated the four-step synthetic route disclosed in his publication and confirmed that he had indeed synthesized nabumetone prior to 1973.

█ Claim 2 also recites the chemical structure of nabumetone. The only difference is that claim 2 claims the chemical in its solid form, and claim 4 recites the compound in an oil form. Because expert testimony confirmed that nabumetone when made is in an oil form and always solidifies at room temperature, we agree with the lower court that the solid form is an inherent property of the compound. Thus claim 2 is inherently anticipated by Chatterjea & Prasad.

Because we affirm the determination that claims 2 and 4 are invalid for anticipation, we do not reach the inequitable conduct issue.