**In re RELAFEN ANTITRUST LITIGATION**

No. CIV.A. 01–12239–WGY.

United States District Court,
D. Massachusetts.

Oct. 1, 2003.

William Alper, Cohen, Pontani, Lieberman & Pavane, New York, NY, for Eon Labs, Inc., Consol Plaintiff.

Richard A. Arnold, Kenny Nachwalter Seymour Arnold Critchlow & Spector, PA, Miami, FL, for Walgreen Company, Consol Plaintiff.

Michael J. Boni, Kohn, Swift & Graf, Philadelphia, PA, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Bernard J. Bonn, III, Abbey Gardy & Squitieri, New York, NY, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Defendants.

**58**

Jacqueline E. Bryks, Cohen, Milstein, Hausfeld & Toll, New York, NY, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Michael M. Buchman, Milbert, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consol Plaintiffs.

Patrick E. Cafferty, Miller, Faucher and Cafferty, LLP, Ann Arbor, MI, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Safeway, Inc., Sheet Metal Workers Local 441 Health & Welfare Plan, Consol Plaintiffs.

Neill Clark, Berger & Montague, Philadelphia, PA, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Eric Cramer, Berger & Montague, Philadelphia, PA, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Glen DeValerio, Berman DeValerio Pease Tabacco Burt & Pucillo, Boston, MA, for Smithfield Foods, Inc, Louise Houchins, Consol Plaintiffs.

Kathleen M. Donovan–Maher, Berman DeValerio Pease Tabacco Burt & Pucillo, Boston, MA, for Louise Houchins, Consol Plaintiff.

Ruth T. Dowling, Palmer & Dodge, LLP, Boston, MA, for Eon Labs, Inc., Consol Plaintiff.

Nancy F. Gans, Moulton & Gans, PC, Boston, MA, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

George G. Gordon, Dechert LLP, Philadelphia, PA, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Defendants.

Daniel E. Gustafson, Heins Mills & Olson, P.L.C., Minneapolis, MN, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consol Plaintiffs.

Samuel D. Heins, Heins, Mills & Olson, Minneapolis, MN, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consol Plaintiffs.

Theodore M. Hess–Mahan, Shapiro Haber & Urmy LLP, Boston, MA, for Direct Purchaser, Consol Plaintiff.

Timothy C. Hester, Washington, DC, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Defendants.

Elizabeth J. Holland, Kenyon & Kenyon, New York, NY, for Teva Pharmaceutical Industries LTD, Teva Pharmaceuticals USA, Inc., Consol Plaintiffs.

Mayme A. Holt–Brown, Percy, Smith, Foote, & Gadel, LLP, Alexandria, LA, for Teamsters Local No. 35 Heath Plans, Elliot Franklin, Patrick J. Lynch, Consol Plaintiffs.

Michael J. Kane, Mager White & Goldstein LLP, Jenkintown, PA, for Barbara Brown, Consol Plaintiff.

Robert N. Kaplan, Kaplan, Fox & Kilsheimer LLP, New York, NY, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Kevin T. Kerns, Dechert LLP, Philadelphia, PA, for Glaxosmithkline PLC, Smithkline Beecham Corporation, Defendants.

Richard J. Kilsheimer, Kaplan Fox & Kilsheimer LLP, New York, NY, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Peter Kohn, Berger & Montague, Philadelphia, PA, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Steven J. Lee, Kenyon & Kenyon, New York, NY, for Teva Pharmaceutical Industries LTD, Teva Pharmaceuticals USA, Inc., Consol Plaintiffs.

Theodore M. Leiverman, Spector, Roseman & Kodroff, Philadelphia, PA, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, IBEW—NECA Local 505 Health & Welfare Plan, Sheet Metal Workers Local 441 Health & Welfare Plan, Consol Plaintiffs.

Lester L. Levy, Wolf, Popper, Ross, Wolf & Jones, New York, NY, for Barbara Brown, Consol Plaintiff.

Richard D Margiano, Palmer & Dodge LLP, Boston, MA, for Eon Labs, Inc., Consol Plaintiff.

James W. Matthews, Sherin and Lodgen LLP, Boston, MA, for Teva Pharmaceutical Industries LTD, Teva Pharmaceuticals USA, Inc., Consol Plaintiffs.

Robert J. Muldoon, Jr., Boston, MA, for Teva Pharmaceutical Industries LTD, Teva Pharmaceuticals USA, Inc., Consol Plaintiffs.

Edward Notargiacomo, Hagens Berman, Boston, MA, for A.F. of L.—A.G.C. Building Trades Welfare Plan, End–Payor Plaintiffs, Hy–Vee, Inc., IBEW—NECA Local 505 Health & Welfare Plan, Safeway, Inc., Sheet Metal Workers Local 441 Health & Welfare Plan, Barbara Brown, Jennifer Kravitz, Consol Plaintiffs.

Linda P. Nussbaum, Cohen, Milstein, Hausfeld & Toll, New York, NY, for Meijer Distribution, Inc., Meijer, Inc., Plaintiffs.

Joseph Opper, Garwin, Bronzaft, Gerstein & Fisher, New York, NY, for Teva Pharmaceutical Industries LTD, Teva Pharmaceuticals USA, Inc., Consol Plaintiffs.

Margaret H. Paget, Sherin & Lodgen, Boston, MA, for Teva Pharmaceutical Industries LTD, Teva Pharmaceuticals USA, Inc., Consol Plaintiffs.

David K. Park, Willkie Farr & Gallagher, New York, NY, for Teva Pharmaceutical Industries LTD, Teva Pharmaceuticals USA, Inc., Consol Plaintiffs.

David Pastor, Gilman and Pastor, LLP, Saugus, for Tyler Fox, Consol Plaintiff.

Douglas H. Patton, Dewsnup, King & Olsen, Salt Lake City, UT, for Teamsters Local No. 35 Heath Plans, Walgreen Company, Elliot Franklin, Patrick J. Lynch, Consol Plaintiffs.

Bemard Persky, Goodkind, Labaton, Rudoff & Sucharow, LLP, New York, NY, for Meijer Distribution, Inc., Plaintiff.

Scott E. Perwin, Kenny, Nachwalter, Seymour, Arnold, Critchlow & Spector, Miami, FL, for Albertson's, Inc., Eckerd Corporation, Hy–Vee, Inc., Kroger Co., The, Walgreen Company, Consol Plaintiffs.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

This case presents a consolidated action against Smithkline Beecham Corporation and Glaxosmithkline P.L.C. (collectively "Smithkline") for various violations of the antitrust laws with respect to its patent for the chemical compound known as nabumetone, which it sells commercially as "Relafen." Smithkline moves to dismiss all claims against it as barred by the applicable statute of limitations, and the plaintiffs, pursuant to the doctrine of collateral estoppel, move to preclude Smithkline from "re-litigating" issues they claim were previously decided by the district court.

## A. Factual Background

On August 29, 1974, Smithkline filed with the Patent and Trademark Office (the "Patent Office") the first in a series of six related patent applications concerning the compound nabumetone. The first five patent applications were either rejected by the Patent Office or abandoned by Smithkline. On November 2, 1982, after Smithkline filed its sixth application (the "'190 Application"), the Patent Office issued its final rejection, specifically citing a 1973 article (the "Chatterjea & Prasad Publication") as the basis of the rejection. After Smithkline filed a response to the final rejection, including declarations and affidavits, the Patent Office reversed its position and issued Smithkline a patent for nabumetone (the "'639 Patent") on December 13, 1983. Smithkline commenced sales of its nabumetone product known as "Relafen" in February, 1992.

Subsequently, Smithkline filed suit against Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals USA ("Teva"), Eon Labs, Inc. ("Eon"), and others for infringement of its '639 Patent. Teva filed a counterclaim seeking an order declaring claims 2 and 4 of the '639 Patent invalid because nabumetone was anticipated by prior art. Teva also claimed that the '639 Patent was unenforceable because of alleged inequitable conduct of Smithkline before the Patent Office. The case was tried before Judge Lindsay of this district and the bench trial, commencing January 8, 2001, lasted sixteen days. On August 14, 2001, the district court issued a sixty-seven-page opinion in which it found, *inter alia*, that (1) claims 2 and 4 of the '639 Patent were invalid as anticipated by prior art; and (2) the '639 Patent was unenforceable because of Smithkline's inequitable conduct. *In re '639 Patent Litig.*, 154 F.Supp.2d 157, 194–95 (D.Mass. 2001) (Lindsay, J.). Smithkline appealed

Judge Lindsay's decision. On August 15, 2002, the Federal Circuit affirmed the District Court's decision as to the validity of the '639 Patent. *SmithKline Beecham Corp. v. Copley Pharm., Inc.*, 45 Fed. Appx. 915, 917 (Fed.Cir.2002) (unpublished opinion). That court, however, did not reach the issue of inequitable conduct. *Id.*

## B. Timing of Smithkline's Suit and the FDA's Stay

The '639 Patent claims the compound nabumetone, a non-steroidal anti-inflammatory drug that Smithkline has marketed under the brand name Relafen. Smithkline's Mem. [Docket No. 24] at 1. In the Fall of 1997, Copley Pharmaceutical, Inc. ("Copley") and Teva sought approval from the Food and Drug Administration (the "FDA") to market generic nabumetone products and notified Smithkline of their contention that their generic products did not infringe the '639 Patent. *Id.* Smithkline filed the alleged sham patent suits in question on October 27, 1997 (against Copley), November 13, 1997 (against Teva), and February 17, 1998 (against Eon). *Id.* Upon commencement of Smithkline's lawsuit, the FDA, following its procedures, stayed approval of the generic drugs for thirty months. *Id.* at 4. On August 8, and December 24, 1998, the FDA issued tentative approval to Eon's and Teva's generic nabumetone products, but the FDA withheld final approval until the conclusion of the thirty-month stay period. *Id.*; End–Payor Pls.' Mem. Opp'n [Docket No. 80] at 4. That stay period terminated in May, 2000. All of the cases embodied in the instant consolidated action were filed over four years after Smithkline filed its several patent suits.

Essentially, the plaintiffs claim that, but for Smithkline's wrongful filing of a patent lawsuit, purchasers could have begun purchasing nabumetone in a competitive mar-

ket—comprising both Relafen and the generic alternatives—as early as August, 1998. Because of the thirty-month stay, however, the generic alternatives did not become available until May, 2000. The plaintiffs allege that Smithkline's filing of a lawsuit was anti-competitive behavior that caused injury, in violation of federal antitrust laws.

### C. Procedural Background

Meijer, Inc. and Meijer Distribution, Inc. ("Meijer") are the lead plaintiffs in this consolidated action, which comprises many plaintiffs and several defendants. On December 18, 2001, Meijer filed suit against Smithkline[1] for, *inter alia,* violations of the federal antitrust laws. The case was originally drawn by Judge Lindsay, but he transferred the consolidated action to this Court on April 12, 2002.

The complaints of the other plaintiffs in the consolidated action present similar, though slightly varied, counts.[2] A consolidated class action complaint was filed on December 26, 2002. Eon and Teva, which are competitors and producers of generic nabumetone, also filed suit against Smithkline. Teva, however, settled its case with Smithkline on May 1, 2003.

## II. STATUTE OF LIMITATIONS

Save for the claims of Eon Labs, Smithkline has moved to dismiss the consolidated complaint as untimely filed. Smithkline *has not* moved to dismiss Eon's claims *in this set* of motions. The first legal question presented is thus discrete: when does the instant action accrue for purposes of

analyzing the relevant statute of limitations? Smithkline contends that the action began to accrue when it filed the alleged sham lawsuit(s), but the plaintiffs maintain that the relevant date is much later.

### A. Four–Year Statute of Limitations

Federal law requires that "[a]ny action to enforce any cause of action under [the Sherman or Clayton Antitrust Acts] shall be forever barred unless commenced *within four years* after the cause of action has accrued." 15 U.S.C. § 15b (2000) (emphasis added). Under this section, "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). The "act" complained of in this case is the alleged sham patent lawsuit filed by Smithkline in 1997. Some courts have held that, where a plaintiff alleges that a lawsuit was brought in bad faith to suppress competition, the operative overt act for purposes of the antitrust limitations statute is the filing of the sham lawsuit. *See, e.g., Al George, Inc. v. Envirotech Corp.,* 939 F.2d 1271, 1274–75 (5th Cir. 1991); *Korody–Colyer Corp. v. General Motors Corp.,* 828 F.2d 1572, 1578–79 (Fed.Cir.1987); *Pace Indus., Inc. v. Three Phoenix Co.,* 813 F.2d 234, 239 (9th Cir. 1987); *Lender's Serv., Inc. v. Dayton Bar Ass'n,* 758 F.Supp. 429, 442–43 (S.D.Ohio 1991). Here, it is undisputed that the lawsuits were filed more than four years prior to the filing of the complaints in the instant case. In other words, if the operative "act" for purposes of the limitations

---

1. Some of the plaintiffs have also named Carl J. Rose ("Rose") and Richard K. Anderson ("Anderson") as defendants. Smithkline's counsel states that they do not represent either Rose or Anderson. Neither Rose nor Anderson has made an appearance in this case.

2. While all allege violations of the Sherman Antitrust Act, some allege analogous state law claims, as well as common law fraud claims.

statute is merely Smithkline's filing of the lawsuit, the instant cases would likely be barred, as were the claims in the cases cited above. The analysis, however, does not end here.

## B. Statute of Limitations Exceptions

The Supreme Court has delineated at least two distinct exceptions to the four-year statute of limitations in antitrust actions. First, a plaintiff may recover for a defendant's "conduct which constitute[s] a continuing violation of the Sherman Act and which inflicted continuing and accumulating harm," notwithstanding the four-year limitations statute. *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n. 15, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); *accord Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997). Second, where damages flowing from anti-competitive conduct are unascertainable at the time the defendant engages in the conduct, "the cause of action for future damages ... will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any time within four years from the date they were inflicted." *Zenith Radio Corp.*, 401 U.S. at 339, 91 S.Ct. 795.

### 1. Continuing Antitrust Violation

■ The continuing violation exception is not applicable in the instant case. The cases involving "continuing violations" generally have comprised defendants who have repeatedly invaded the plaintiffs' interests. *See, e.g., DXS, Inc. v. Siemens Med. Sys. Inc.*, 100 F.3d 462, 467 (6th Cir.1996). Such cases are typically price-fixing conspiracies that endure over periods of time. *See* Julian O. von Kalinowski,

Antitrust Laws and Trade Regulation § 162.02[2] (2d ed.2003). As the Second Circuit has noted, a monopolist that "continues to use the power it has gained illicitly [through predatory pricing] to overcharge its customers ... has no claim on the repose that a statute of limitations is intended to provide." *Berkey Photo Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir.1979). The court explained that "[i]t is only when the monopolist, having devoured its smaller rivals, enjoys the spoils of its conquest by boosting its price to excessive levels that a *purchaser* 'feels the adverse impact' of the violation." *Id.* (emphasis added). In other words, the continuing act of charging higher prices is the continuing violation, and a plaintiff is not limited by the initial acts of predatory pricing by the defendant.

The instant case is very different. The "act" complained of is the filing of the lawsuit; the plaintiffs do not assert, for example, that Smithkline was engaged in a series of discrete acts of predatory pricing. In a case involving a plaintiff competitor suing a defendant for filing a sham suit, the Ninth Circuit ruled that "the reasonable expectation from the commencement of a lawsuit is that the plaintiff will pursue the litigation until it prevails or the last appeal is exhausted.... Any injury to [the plaintiff] resulting from continued prosecution through the normal course of the appellate process relates back to the initial decision to file." *Pace*, 813 F.2d at 238–39; *see also Al George*, 939 F.2d at 1275; *Korody*, 828 F.2d at 1579. Continuing to litigate a sham law suit does not constitute a "continuing violation" of the antitrust laws.[3]

---

**3.** Despite the protestation of some of the plaintiffs, *Klehr* does not command a different result. It holds that "each overt act that is part of the violation and that injures the plaintiff ... starts the statutory period running again ...." 521 U.S. at 189, 117 S.Ct. 1984 (internal quotations omitted). *Klehr*'s holding, however, presumes that continuing violations exist; indeed, it uses a "price-fixing

## 2. Basic Accrual and Speculative Damages Exception of *Zenith Radio*

The basic accrual or speculative damages exception to the limitations statute, however, is applicable here. As stated above, where damages flowing from conduct violating the antitrust laws are uncertain at the time the defendant engages in the conduct, the cause of action for future damages accrues on the date they are suffered. *Zenith Radio Corp.*, 401 U.S. at 339, 91 S.Ct. 795. *Zenith Corp.*, however, did not establish new standards for determining whether damages are speculative at the time of the alleged conduct. *Pace*, 813 F.2d at 240. The Ninth Circuit distinguishes between speculative damages and an uncertain magnitude of damages, and it has ruled that "[t]he former denotes failure to establish an injury, while the latter denotes imprecision with regard to the scope or extent of the injury." *Id.* In *Pace*, for example, a competitor brought an antitrust action against manufacturers and sellers of certain equipment for seeking to enforce an allegedly illegal covenant not to compete against the plaintiff. The court held that the plaintiff's claim for lost profits were not speculative because he "could have estimated the size of and the possible profits from its entry into the ... market." *Id.*

By contrast, in this case, when Smithkline filed suit it was entirely speculative whether *any* damages would flow because no generic-producing competitor had yet received FDA approval. In other words, whether purchasers might some day be injured because the FDA's thirty-month stay would prevent generic competitors from entering the relevant market depends on whether the FDA itself would even approve such competitors, which was unknown at the time the suit was filed. It would have been entirely speculative in early 1998 to determine how a less competitive market would lead to injuries to purchasers because it would require one to speculate as to whether there would be any competitors.

Furthermore, Smithkline miscasts the plaintiffs' argument when it argues that the "[f]ederal courts have rejected the proposition that FDA approval is a necessary prerequisite to an antitrust claim arising from a pioneer's alleged unlawful conduct in delaying generic entry." Smithkline's Mem. at 5. Smithkline cites *Andrx Pharmaceuticals v. Biovail Corp.*, wherein the D.C. Circuit concluded that lack of FDA approval did not bar an antitrust suit brought by a generic drug *competitor* applicant alleging that the pioneer and another generic applicant unlawfully conspired to impede market entry. 256 F.3d 799, 815 (D.C.Cir.2001). The court held that FDA approval merely implicated the amount of damages, but the plaintiff could still seek injunctive relief. *Id.* That case is inapposite for two reasons. First, it concerned a single competitor's damages, not the damages incurred by purchasers within the entire market. Second, the court noted in *Andrx* that injunctive relief would still be available to the generic competitor with respect to the alleged conspiracy between the pioneer defendant and the generic defendant. Injunctive relief would not have the same effect here, where the alleged misconduct is a sham suit, not a conspiracy. In other words, the purchasers could not seek to enjoin Smithkline's patent enforcement suit. Notwithstanding its relevance, *Andrx* is not binding on this Court.

The practical effects of the alternative rule reveals the inherent problems such a dictate would cause. Following Smith-

conspiracy" as an example, *id.*, but such cir- cumstances are absent here.

kline's reasoning, the plaintiffs should have filed suit while the underlying patent suit was still pending on the off chance that the patent suit turned out to be a sham. Of course, the plaintiffs would not know that it was a sham suit at that point and, therefore, would be unable to plead any damages. To require such action would lead to the absurd result that vast numbers of potential antitrust plaintiffs would be required in every patent or business litigation to sue or intervene preemptively in those actions in the unlikely (but possible) event that the suit was filed fraudulently. Such a policy inevitably would lead to a glut of superfluous litigation and would effectively cripple many underlying suits with the burden of accommodating legions of potential antitrust plaintiffs.

Put another way, no cause of action would lie for the plaintiff purchasers against Smithkline when Smithkline filed suit because the plaintiffs would have been unable to plead any damages, other than those of a purely speculative variety. *Barnosky Oils Inc. v. Union Oil Co.*, 665 F.2d 74, 82 (6th Cir.1981). As the Supreme Court has said:

> [F]uture damages that could not be proved within four years of the conduct from which they flowed would be forever incapable of recovery, contrary to the congressional purpose that private actions serve as a bulwark of antitrust enforcement, and that the antitrust laws fully protect the victims of the forbidden practices as well as the public.

*Zenith Radio*, 401 U.S. at 340, 91 S.Ct. 795 (internal citations and quotation marks omitted). Prudentially and legally, therefore, Smithkline's argument cannot stand.[4]

Smithkline—to its credit—has conceded that all relevant plaintiffs' actions here would be saved if the August 8, 1998 date is adjudged the date of accrual. Accordingly, Smithkline's Motions to Dismiss [Docket No. 6 in 03–cv10040–WGY; Docket No. 7 in 02–cv11242–WGY; Docket No. 23 in 02–cv10588–WGY; and Docket No. 78 in 01–cv12239–WGY] are DENIED.

## III. COLLATERAL ESTOPPEL

Many of the plaintiffs have filed motions under the doctrine of collateral estoppel to preclude Smithkline from "re-litigating" many of the "issues" they claim were already decided by Judge Lindsay. Specifically, the plaintiffs sought to give collateral estoppel effect to 436 separate findings in Judge Lindsay's opinion. Because the Court is not "required to engage in a 'hunt and peck' exercise to ferret out potentially relevant and necessary findings," *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1033 (9th Cir.2001) (holding applicable to a set of 895 findings in issue), the Court ordered the parties to file further briefs. Specifically, the Court directed the parties to designate those findings that should be determined "essential" to the prior determination of invalidity. The parties complied and the plaintiffs now seek to preclude "re-litigation" of fifty separate findings in Judge Lindsay's opinion. This opinion first lays out the relevant legal framework and then proceeds to an analysis of the specific findings and issues in question.

### A. Principles of Collateral Estoppel and Claim Preclusion

Generally, a party seeking to invoke issue preclusion or collateral estoppel

---

4. The "End–Payor Plaintiffs" alone also allege fraudulent concealment as the basis for equitably tolling the statute of limitations in this case. End–Payor Plaintiffs' Mem. Opp'n at

11–18. Because the motions to dismiss are denied on other grounds, the Court need not reach the issue of fraudulent concealment here.

must establish that (1) the issue to be precluded is the same as that disputed in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was determined by a valid and binding final judgment or order; and (4) the determination of the issue in the prior proceeding was essential or necessary to the final judgment or order. *Plumley v. S. Container, Inc.*, 303 F.3d 364, 373 (1st Cir.2002).[5] In this case, the parties dispute elements one and four—the identity of the issues to be precluded and the necessity of the findings in question.

### 1. Identity of the Issues to be Precluded

The parties sharply disagree about whether the issues to be precluded are the same as those disputed in the prior proceeding. The scope of collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding." *Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir.1999) (quoting *C.I.R. v. Sunnen*, 333 U.S. 591, 599–600, 68 S.Ct. 715, 92 L.Ed. 898 (1948)). Indeed, "the mere presence of a modicum of factual commonality does not establish the requisite identity of issues for purposes of collateral estoppel." *Id.*

■ Defining the issue precluded, however, is not entirely pellucid. Indeed, one of the most difficult tasks for the Court "is to delineate the issue on which litigation is,

or is not, foreclosed by the prior judgment." Restatement (Second) of Judgments § 27, cmt. c (1981). Despite the inherent difficulty, "[c]ourts have readily perceived that for purposes of preclusion, issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4417 (2002) (internal quotation marks omitted); *accord Faigin*, 184 F.3d at 78 (holding that "the issues must be defined by reference to the judicial determinations at stake").

■ In the instant case, the plaintiffs paint the issues with too broad a brush, while Smithkline's brush is too fine. The plaintiffs' lawsuits essentially make two claims: (1) Smithkline fraudulently procured its patent or enforced a patent knowingly obtained by fraud on the Patent Office; and (2) Smithkline filed and prosecuted sham litigation to cover an attempt to interfere directly with the business relationships of its competitors. Pls.' Mem. [Docket No. 76] at 2. To prevail, the plaintiffs must show that Smithkline made knowing misrepresentations in procuring its patent and that Smithkline attempted to enforce a patent that it knew was invalid with the intent to stifle competition. Smithkline casts the "issue" in question merely as "whether [Smithkline's] patent

---

5. The instant case, however, presents a wrinkle. First, the plaintiffs are seeking to apply *offensive* collateral estoppel. Second, the plaintiffs are not similarly situated, that is, while Teva was a party to the prior litigation (thus invoking typical "mutual offensive collateral estoppel"), the other plaintiffs were not such parties (thus invoking "non-mutual offensive collateral estoppel"). The Supreme Court has held that in cases of non-mutual offensive collateral estoppel, "[t]he general rule should be that in cases where a plaintiff

could easily have joined in the earlier action . . . a trial judge should not allow the use of [non-mutual] offensive collateral estoppel." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *accord Republic Sec. Corp. v. P.R. Aqueduct & Sewer Auth.*, 674 F.2d 952, 956 n. 6 (1st Cir.1982). The posture of this case is much different than the underlying patent litigation, such that the consolidated parties probably could not easily have joined the prior action.

suit was 'objectively baseless' and subjectively in bad faith ...." Def.'s Opp'n [Docket No. 77] at 18. As the plaintiffs demonstrate, however, other discrete legal "issues" are constitutive of the larger legal determination at stake. In order to prevail, the plaintiffs must show that Smithkline knowingly sought to enforce an invalid patent. Therefore, whether Smithkline's patent is in fact invalid under federal patent law is an "issue" to be resolved in this case. Of course, in the prior patent litigation, Judge Lindsay determined that Smithkline's patent was invalid. Thus, contrary to Smithkline's assertion, this issue is identical.

■ The plaintiffs, however, seek too much. The plaintiffs correctly point out that, in the instant case, they will need to show that Smithkline knew the '639 Patent was anticipated by prior art, that Smithkline misled the Patent Office by making misrepresentations, and that Smithkline filed and prosecuted objectively baseless litigation to interfere directly with the business relationships of competitors. Pls.' Mem. at 3. Accordingly, the plaintiffs attempt to argue that Smithkline should be estopped from arguing that it did not "knowingly" make misrepresentations because Judge Lindsay already made such a finding. Indeed, Judge Lindsay found that Smithkline made misrepresentations and intentionally misled the Patent Office. 154 F.Supp.2d at 171–72. Judge Lindsay's findings, however, do not prevent Smithkline from litigating the issue in this case.

■ First, while it is true that Judge Lindsay based his decision on both invalidity and inequitable conduct by Smithkline, the Federal Circuit affirmed the district court only as to the issue of invalidity and did not "reach the inequitable conduct issue." *SmithKline Beecham,* 45 Fed. Appx. at 917. The First Circuit has held that when a lower court judgment is based on alternative holdings, that is "if 'the appellate court' affirms on one ground and passes on the other, 'the judgment is conclusive [only] as to the first determination'" and the ground passed over does not receive preclusive effect. *In re Baylis,* 217 F.3d 66, 71 (1st Cir.2000) (*quoting* Restatement (Second) of Judgments § 27, cmt. o (1981)); *see also Dow Chem. v. U.S. EPA,* 832 F.2d 319, 323 (5th Cir.1987) ("[F]ederal decisions agree that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision."); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4421 (2002) ("As to matters passed over by the appellate court ... preclusion is not available on the basis of the trial-court decision. This result is supported by the fact that the appellate choice of grounds for decision has made unavailable appellate review of the alternative grounds.").

## 2. Necessity

■ Second, notwithstanding the plaintiffs' contentions, Judge Lindsay's statement that Smithkline made misrepresentations in the context of the invalidity determination does not collaterally estop Smithkline's defense because those findings were not necessary to the judgment. The First Circuit has explained why the issue in question must also have been necessary to the prior judgment:

> The reasons for this condition are that a collateral issue, although it may be the subject of a finding, is less likely to receive close judicial attention *and* the parties may well have only limited incentive to litigate the issue fully since it is not determinative. Under these circumstances, extending the force of the unnecessary finding into a different case is deemed too risky and possibly unfair.

*Commercial Assocs. v. Tilcon Gammino, Inc.*, 998 F.2d 1092, 1097 (1st Cir.1993) (internal citations omitted); *see also* Restatement (Second) of Judgments § 27 (1981); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4421 (2002).

The district court's findings with respect to misrepresentations were not necessary to the final judgment. In his invalidity analysis, Judge Lindsay tackled the threshold question whether deference should be accorded the Patent Office's decision to issue a patent. 154 F.Supp.2d at 172. The Federal Circuit has held that—in determining a patent's validity—a court must pay deference to the Patent Office's decision to issue a valid patent if the Patent Office considered all the evidence and prior art that is before the court. *Ultra–Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed.Cir.2000) ("When no prior art other than that which was considered by the [Patent Office] examiner is relied on by the attacker, he has the added burden of overcoming the deference due [the Patent Office].") (internal quotation marks omitted); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359–60 (Fed.Cir.1984). Judge Lindsay stated:

> Several factors in this case cancel the deference ordinarily due to a [Patent Office] decision. First, as I have already determined, material misrepresentations were made to the [Patent Office]. Thus, the [Patent Office's] decision was based at least in part on incorrect information. Second, evidence was offered at trial that was not before the [Patent Office], including research,

internal communications and other correspondence.

154 F.Supp.2d at 172. Judge Lindsay then quoted *American Hoist* for the proposition cited above.

The misrepresentation finding, however, was not necessary to the court's final judgment respecting *validity*, notwithstanding Judge Lindsay's reference thereto in his deference analysis. The fact that Smithkline had made misrepresentations to the Patent Office was not necessary to the decision that no deference ought have been accorded the Patent Office because the only necessary finding therein—under *American Hoist*—was that the Patent Office had incomplete information. The relevance of the misrepresentations finding is simply dicta as it relates to the invalidity analysis. Wright and Miller have suggested that:

> the inquiry into necessity is likely to be a largely objective process, in which a later court simply asks what was reasonably necessary to support the prior judgment. The possibility that a particular finding may have played a central role in the subjective process of deciding the first action is apt to be put aside, primarily because it is very difficult to reconstruct the process of decision with any certainty. The result may be to deny preclusive effect as to findings that in fact were considered very carefully.

Federal Practice and Procedure § 4421. In this case, merely because Judge Lindsay's inequitable conduct findings are referenced in his invalidity analysis does not convert those findings into necessary components of his invalidity judgment.[6]

---

**6.** As Wright and Miller discuss, the process of determining what was "essential" to Judge Lindsay's rulings is not entirely transparent. Clearly, Judge Lindsay determined that Smithkline had engaged in inequitable conduct to render the patent unenforceable, but the Federal Circuit did not reach that issue on appeal. Judge Lindsay's cogent opinion was written as an integrated whole. This Court's responsibility, however, is to analyze the discrete findings contained therein and determine which were necessary to the court's

Moreover, what Smithkline knew, did not know, or may have represented about the prior art in question is not essential in determining whether the prior art anticipated the '639 Patent because patent validity analysis comprises an objective standard based on whether an ordinary person skilled in the art would be enabled to practice the invention claimed in the patent, not a subjective standard about what Smithkline or its agents actually knew or represented about the prior art. In other words, Judge Lindsay's passing reference to Smithkline's misrepresentations in his validity analysis is insufficient to confer necessity upon those findings as they relate to his final judgment of invalidity.

### B. The "Issues" to Be Precluded

■ Notwithstanding Smithkline's arguments with respect to identity, it concedes that several of the plaintiffs' proposed findings from Judge Lindsay's opinion would estop them from re-litigating those issues at trial in this case. Clearly, Judge Lindsay's ultimate conclusion that Smithkline's patent was invalid meets the necessary collateral estoppel elements as discussed above, but "collateral estoppel is no longer limited to ultimate issues: necessary *intermediate* findings can now be used to preclude relitigation." *Biggins v. Hazen Paper Co.*, 111 F.3d 205, 210 (1st Cir.1997); *see also* Restatement (Second) Judgments § 27, cmt. j (1982). The Court now proceeds to determine which of those proposed findings Smithkline should be precluded from relitigating.

### 1. Smithkline's Concessions

Smithkline essentially concedes that the following findings by Judge Lindsay were

essential to the invalidity ruling, which correspond to numbers 1, 2, 18, and 20 in the plaintiffs' proposed list of findings. Pls. Mem. at Ex. A.

(1) "The Chatterjea & Prasad Publication was published more than one year prior to the date of [Smithkline's] application in the United States for the '639 patent . . . ." [7] 154 F.Supp.2d at 162.

(2) "The category of art into which the '639 patent falls is that of synthetic organic chemistry." *Id.* at 161.

(3) "One of ordinary skill in the art of synthetic organic chemistry in 1973 was a person having either a doctoral degree in organic chemistry, primarily synthetic organic chemistry, with a year or two of post-doctoral experience, either industrial or academic; or a masters degree in synthetic organic chemistry with four or five years of industrial experience in that field." *Id.*

(4) "[T]he Chatterjea & Prasad publication described nabumetone to the ordinary chemist in 1973 and anticipated claim 4 of the '639 patent." *Id.* at 186.

(5) "[T]he Chatterjea & Prasad publication anticipates claim 2 as well as claim 4 of the '639 patent." *Id.* at 187.

The Court, therefore, rules that Smithkline is precluded from re-litigating these issues and findings in this case.

In addition, Smithkline also concedes that Judge Lindsay—in determining whether deference ought be accorded to the Patent Office in assessing validity—made a conclusion that was essential to that determination (as discussed above):

(6) "[E]vidence [related to the validity of the '639 Patent] was offered at trial that

final ruling on invalidity, no matter where the findings were placed temporally or spatially within the opinion.

**7.** This finding was not included in the plaintiffs' proposed list.

was not before the [Patent Office], including research, internal communications and other correspondence." *Id.* at 172.

Although this finding does not correspond specifically to any proposed by the plaintiffs, the Court rules that Smithkline is precluded from re-litigating this conclusion at trial.

### 2. Contested Findings

#### a. Knowledge of Smithkline Chemists

■ Smithkline submits that the discrete reasons underlying Judge Lindsay's findings with respect to what was understood by a person of ordinary skill in the art are not "essential"; rather, they are merely dicta serving to explain his rationale. The Court generally agrees. The relevant inquiry comprises an objective analysis of the ordinary person skilled in the art. The subjective knowledge and beliefs of the Smithkline chemists—though perhaps persuasive to Judge Lindsay— were not *necessary* to his ruling of invalidity, which utilizes an objective standard. Therefore, this Court does not accord preclusive effect to findings 6, 8, or 11 of the plaintiffs' proposals.

#### b. Objective Findings Related to an Ordinary Person Skilled in the Art

■ Notwithstanding the immediately preceding discussion, other findings by Judge Lindsay were intermediate findings

necessary to his conclusions with respect to the ordinary person skilled in the art and a ruling of invalidity. The following correspond to findings 3, 4, 5, 16,[8] and 19 of the plaintiffs' proposals:

(7) "The person of ordinary skill in the art in 1973 ... knew how to conduct standard reactions, such as reduction reactions; reactions named in the Chatterjea & Prasad publication, such as the Grignard reaction; and could apply standard organic chemical methods to the synthesis of simple organic molecules." *Id.* at 161 (footnote omitted).

(8) "The ordinary chemist in 1973 was familiar with nuclear magnetic resonance ("NMR") spectroscopy ...." *Id.*

(9) "The ordinary chemist in 1973 also was familiar with standard chemistry and organic synthesis textbooks, and was able to do a literature search using *Chemical Abstracts* ...." *Id.* at 162.

(10) "Starting an outlined synthesis at an intermediate step ... is not an unusual practice in synthetic organic chemistry." *Id.* at 178.

(11) "[I]t is not necessary for the ordinary chemist attempting to replicate a synthesis set forth in a scientific article to derive each of his or her starting materials only from a footnoted reference." *Id.* at 186.

Therefore, the Court accords preclusive effect to these findings.[9]

---

8. With respect to these findings, Smithkline baldly concludes that "Judge Lindsay did not rely on any of these background points about the scope of an ordinary chemist's knowledge." Def.'s. Opp'n at 14. The Court disagrees with this conclusory statement. Facts pertaining to the level of ordinary skill in the art, no matter how "uncontroversial" they may be, were essential to Judge Lindsay's invalidity determination, as required by basic patent law.

9. The Court declines to accord preclusive effect to findings 13 and 14 in the plaintiffs' proposals. The First Circuit has held that "estoppel must be certain to every intent." *Hoult,* 157 F.3d at 32 (internal quotation marks omitted). As Smithkline points out, findings 13 and 14 relate to the tangential issue of the so-called "Jones error," and Judge Lindsay determined that the issue was not central to his analysis. *See* 154 F.Supp.2d at 177. Therefore, Smithkline is

#### c. Stipulated Facts

 Two of the plaintiffs' proposed findings appear to have been undisputed or stipulated at the prior trial. As Smithkline correctly points out, matters that are "stipulated, admitted without controversy, or determined by default leading to the entry of judgment" do not qualify for preclusive effect. *See In re Kane*, 254 F.3d 325, 329 (1st Cir.2001). Therefore, the Court declines to accord preclusive effect to findings 7 and 12 of the plaintiffs' proposals.

#### d. Findings Related to Smithkline's Knowledge and Representations to the Patent Office

As discussed in Part III.A.2 above, Judge Lindsay's findings with respect to what Smithkline may have known, represented, or misrepresented to the Patent Office cannot be accorded preclusive effect. Therefore, the Court declines to accord preclusive effect to findings 9, 10, 15, 17, 21–24, and 27–39 of the plaintiffs' proposals.

#### e. Findings Related to Prosecution History

The plaintiffs also argue that preclusive effect ought be applied to various findings by Judge Lindsay with respect to the prosecution history of the '639 Patent, Smithkline's attempts to replicate or distinguish the prior art in question, and the credibility of various submissions made by Smithkline to the Patent Office. Again, however, these findings relate to inequitable conduct and are not essential to Judge Lindsay's conclusion that an ordinary person skilled in the art would be enabled to practice the claimed invention, based on the prior art in question. Therefore, the Court declines to accord preclusive effect

not estopped from litigating these issues in

to findings 25, 26, 40, and 42–50 of the plaintiffs' proposals.

Accordingly, the plaintiffs' motions to give collateral estoppel effect [Docket Nos. 75 in 01–cv12239–WGY; and 95, 102, 103, and 104 in 01–cv12222–WGY] are ALLOWED in PART and DENIED in PART. They are allowed with respect to those findings numbered one through eleven in this memorandum. They are otherwise denied.

SO ORDERED.